43 C.C.P.A. (Patents)
**Application of Robert Jules TATINCLOUX and Roger Georges Guy.**
**Patent Appeal No. 6067.**

United States Court of Customs and Patent Appeals.
Dec. 8, 1955.

Bauer & Seymour, New York City (John L. Seymour, New York City, of counsel), for appellants.

Clarence W. Moore (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and COLE, Judges.

WORLEY, Judge.

On April 28, 1955, we sent to counsel for the parties in interest a decision affirming that of the Board of Appeals of the United States Patent Office as to claims 19 and 29, and reversing that tribunal as to claims 21 and 24, for an application for a patent on "Refractories and Method of Making Them."

Pursuant to our practice, the decision was withheld from formal publication pending the exercise of appellants' right to petition under the rules of the court.

On May 11, 1955, appellants filed a petition for reconsideration of those parts of our decision relating to claims 19 and 29 of the application. That petition was grantd and reargument was had on November 1, 1955.

We have carefully reconsidered the entire case in light of the petition and oral arguments of counsel for appellants and the Commissioner of Patents with respect thereto, and have made certain changes in the wording of our opinion. Consequently, our original opinion of April 28, 1955, is withdrawn and this opinion is substituted for it.

Two claims in appellants' application were allowed by the Primary Examiner. He rejected claims 19, 21 to 29, inclusive, and 31.

The Board of Appeals reversed the examiner's rejection of claims 22, 23, 25, 26, 27, 28 and 31, and sustained his rejection of the other claims involved. On appeal here are claims 19, 21, 24, and 29. The first two are illustrative and read:

"19. A process for making a refractory that comprises making an aqueous colloidal suspension of a refractory material, simultaneously filling the suspension with gas bubbles and flocculating said suspension about said bubbles, and thereafter drying and firing the product.

"21. A process for making a refractory having a bubbly interior that comprises simultaneously generating bubbles in and flocculating slip by the reaction within the mass of a metal of the type of aluminum, zinc, and magnesium with an alkali metal hydroxide."

The invention is directed to the making of refractories, or, more specifically, bricks used in high temperature furnaces. They are characterized by their "bubbly" interiors which are said to provide high insulation properties. Appellants' specification states that the desired result is attained by placing the refractory material in colloidal suspension, filling the mass with bubbles, simultaneously flocculating it about the bubbles, then drying and firing the brick. It also advises that in the preferred form of the invention the refractory material, clay, is put in the form of a slip and the deflocculated mass simultaneously filled with gas bubbles and hardened by flocculating. The formation of the bubbles and the flocculating are carried out simultaneously by the reaction of a hydroxide, silicate, or carbonate of an alkaline metal with aluminum, zinc, or magnesium within the colloidal suspension. It is claimed that in the above method the bubbles are distributed very regularly throughout the mass, and the subsequent hardening of the refractory material produces bricks of uniform structure possessing great strength and high insulating qualities.

The references relied on are:

"Setterberg (Fr.) 281,254 April 12, 1928; Nielsen 2,151,932 March 28, 1939."

The patent to Setterberg recites mixing finely powdered refractory materials with sufficient water to form a plastic dough, adding a substance such as aluminum, capable of evolving gas by reaction with water, forcibly mixing the reaction material into the plastic dough, and then molding the mixture into blocks which are dried and burned at high temperature. The specification states that "Through the gas-forming process a great number of pores are formed and if care is taken in shaping of the blocks, these pores will remain in the blocks so formed."

The patent to Nielsen relates to a process for manufacturing porous articles of clay. It discloses several known processes for producing such articles, including air injection, mixing clay with a previously formed foam or a foam-producing substance, and generating gas within the clay mass. It states that those processes require the clay mass to be "of a not too stiff consistency," the desired consistency usually being obtained by the addition of water; that certain drawbacks result therefrom in the molding of articles from the porous mass; and that the known methods of the manufacture of non-porous clay masses cannot be used to produce porous articles because the porous mass is too liquid to retain its shape. The patentee states that his invention eliminates those drawbacks by obtaining the desired liquid consistency without an increased admixture of water to the clay mass, but by adding a deflocculating agent, such as "alkaline hydroxides or salts of alkalies and weak acids, such as potash, soda, water glass, etc." to produce a slip, the liquid mass stiffened by chemical means in order to mold it in the normal manner.

The claims before us were rejected by the examiner on the patent to Setterberg, with claims 19 and 29 further rejected on Nielsen.

The board sustained the rejection of claims 21 and 24 on Setterberg, holding they distinguish over that reference only by reason of the fluidity of the mixture, and that no unobvious or unexpected result would be attained by adding sufficient water to Setterberg's mixture so that it could be poured into molds. The board stated such a mixture would constitute a "slip."

In comparing the Nielsen disclosure with claims 19 and 29, the board held that although claim 19 requires an aqueous colloidal suspension of a refractory material and a simultaneous filling of the suspension with gas bubbles and flocculation of the suspension about said bubbles, Nielsen discloses first the forming of the gas bubbles, and then the addition of a solidifying agent. The board added "It is not apparent that an unobvious or unexpected result would flow from adding the solidifying agent and forming the gas bubbles at the same time."

Claim 29 is dependent on claim 19 except for the limitation that the refractory material is clay. The board observed that Nielsen uses clay as the refractory material and held that claim unpatentable for the same reasons applicable to claim 19.

Thereafter appellants petitioned for reconsideration of the board's rejection of claims 19 and 29 on Nielsen, alleging that action to be contrary to its reasoning because of the statement quoted above.

The board's attention was directed to an affidavit which alleged that tests made according to the Nielsen process and appellants' process show that "the comparable moduli of rupture for the refractories of applicants and of Nielsen are in the proportion of 19 for applicants' to about 5 for Nielsen's," and "Another astonishing advantage is also shown in that Nielsen refractory had a crushing strength of only 2 kg/sq.c. and another had a crushing strength of 8,

whereas, applicants' refractories had a crushing strength of 25 kg/sw.c."

The board, after noting that appellants had been allowed specific claims, and observing that the involved claims were broadly drawn, denied relief and held that the affidavit "is not convincing in connection with this broad question since affiant did not apply these two procedures to similar mixes employing the same ingredients in each."

We are in agreement with the board that claims 19 and 29 do not patentably distinguish over the Nielsen patent. A comparison of appellants' claim 19 with Nielsen's claim 1 reveals their similarity, the latter succinctly describing Nielsen's disclosure.

"Appellants' Claim 19

"A process for making a refractory that comprises making an aqueous celloidal suspension of a refractory material, simultaneously filling the suspension with gas bubbles and flocculating said suspension about said bubbles, and thereafter drying and firing the product."

"Nielsen's Claim 1

"Process for the manufacture of porous ceramic articles of argillaceous materials, consisting in the following steps, first adding deflocculants to a stiff plastic mass of clay then making the thus produced fluid mass porous by incorporating gases therein and finally adding flocculants to the porous fluid mass and moulding the thus produced restiffened porous mass in known manner."

It will be noted that the only significant differences between the two claims are that claim 19 specifies a "colloidal suspension" instead of a "fluid mass," described in the specification of Nielsen as a "slip," and that it specifies "simultaneously" filling with bubbles and flocculating, instead of successively.

The fact that claim 19 specifies a "colloidal suspension" rather than a "slip" does not appear to describe the essential feature of appellants' invention. Their specification states that "In the preferred form of the invention a refractory body, such as clay, is put in the form of slip or barbotine and the deflocculated mass is simultaneously filled with gas bubbles and hardened by flocculating." Also in their brief the following appears:

"It also seems that the Board has erred in pretending to themselves that the invention will not work except in true colloidal solutions. That is a theory for which they have no justification. It will work in slips as well as in true colloidal suspensions, as the applicants have continuously asserted."

It would appear, therefore, that the basic question as to the patentability of claims 19 and 29 over the Nielsen reference, relates to the simultaneity of the introduction of the gas and the flocculant. We are in agreement with the board that such action does not constitute invention. That requirement of the claims would be met if, in the Nielsen disclosure, air were introduced and flocculants were added at the same time, but, as the board said "It is not apparent that an unobvious or unexpected result would flow from adding the solidifying agent and forming the gas bubbles at the same time." Appellants interpret that as an argument in their favor, alleging, "That statement does not deny that an unexpected result does occur, the Board simply states that it is not obvious that it would occur. * * * The Board has, therefore, found as a fact that what the applicant has done is unobvious."

It is hardly necessary to dissect appellants' reasoning to show the error therein. As we understand the board's decision, it merely holds that in the absence of an unobvious result there

would be no invention in performing the steps of filling the suspension with gas bubbles and flocculating it about them simultaneously instead of sequentially; and that no such unobvious result has been shown. We concur in that holding.

As was pointed out by the board, the affidavit relied on by the appellants as showing unobvious superiority of their product over that of Nielsen did not show application of the two procedures to identical mixes and, therefore, does not prove that the superiority of the product produced by appellants' process resulted from that process rather than from the specific materials employed.

As a general rule, no invention is involved in the broad concept of performing simultaneously operations which have previously been performed in sequence. In re Eksergian, 25 C.C.P.A., Patents, 734, 92 F.2d 811, 35 USPQ 530, and In re Mink, 27 C.C.P.A., Patents, 726, 107 F.2d 586, 43 USPQ 456. An exception may be made where a new and unexpected result is obtained by performing the operations simultaneously but, as above indicated, it has not been satisfactorily shown in the present case that such a result is obtained. We concur with the board that claims 19 and 29 do not define invention over Nielsen.

We cannot, however, support the board's reasoning with respect to claims 21 and 24. Those claims were rejected as unpatentable over the Setterberg reference alone. Although they specify "flocculating slip," the board held they distinguish over the Setterberg reference only as to the fluidity of the mixture, and that no "unobvious or unexpected result would flow from adding sufficient water to the mixture of Setterberg to permit the same to be poured into molds. The mixture so diluted would, in our opinion, be a 'slip'." That holding, however, overlooks the fact that, as pointed out by appellants, Setterberg shows only a "plastic dough," which is neither a colloidal suspension, nor a slip. Furthermore, it is apparent that Setterberg does not contemplate ever having a colloidal suspension or a slip, therefore there could be neither a deflocculation nor a flocculation.

We are of the opinion that appellants have adequately described their process in claims 21 and 24, and that the process is patentable over the disclosure of Setterberg. A suspension is required by the word "slip." It is stated that the suspension is "flocculated." The flocculation is simultaneous with the generation of bubbles. The simultaneous generation of bubbles and flocculation are caused "by the reaction within the mass of a metal of the type of aluminum, zinc, and magnesium with an alkali metal hydroxide." (Claim 21).

Of the above limitations, Setterberg shows only the *generation of gas bubbles* within the mass by the same reaction. In view of the essential difference in the nature of the plastic mass of Setterberg and the slip called for by claims 21 and 24, we have grave doubts that the inventive concept of those claims is fairly suggested by the reference. Since, in our view, claims 21 and 24 sufficiently distinguish over the reference, it becomes necessary to reverse the decision of the board as to those claims.

As previously stated, we have reviewed our original decision in light of appellants' petition but find nothing therein to alter our original conclusion that the decision of the Board of Appeals should be, and it is hereby, affirmed as to claims 19 and 29, and reversed as to claims 21 and 24.

Modified.